SMITH *v.* STATE HIGHWAY COMMISSIONER.

1. HIGHWAYS AND STREETS—STATUTES—CONSTRUCTION.

The legislature did not, by Act No. 243, Pub. Acts 1881, relating to the establishment of highways, intend to change existing highways, nor could it by legislative enactment take property of an individual without compensation.

2. DEDICATION—OFFER AND ACCEPTANCE—DEDICATION BY IMPLICATION.

Dedication of land to the public use for a highway contemplates an offer by the owner and acceptance by the public; if the dedication be by implication the facts and surrounding circumstances must imply not only an offer but also an acceptance.

3. SAME—WIDTH OF HIGHWAY—ACCEPTANCE.

An owner is not bound to offer four rods, and if he offers less the public, at least in the absence of statute, may accept or reject it, or may accept less than the full amount offered.

4. SAME—PUBLIC MAY LOSE RIGHTS BY NONUSER.

Even after acceptance by the public, the rights may, in the absence of statute, be lost by nonuser.

5. SAME—PRESUMPTION REBUTTED BY FACTS—INJUNCTION.

>Where the traveled part of a highway running alongside a river bank did not include the bank and beach of the river, which were never used for said purpose, being unsuited therefor, the court might well hold that there had been no acceptance thereof by the public as part of the highway, but if it be said that an offer to dedicate presumes a four-rod strip, still said presumption is a rebuttable one, and in the present case is rebutted by the facts and circumstances, and therefore the court below properly restrained the public authorities from taking said land without condemnation proceedings.

Appeal from St. Clair; Dingeman (Harry J.), J., presiding. Submitted April 30, 1924. (Docket No. 101.) Decided June 2, 1924.

Bill by Angus M. Smith against Frank F. Rogers, State highway commissioner, and others to enjoin the execution of a contract for the construction of a highway. From a decree for plaintiff, defendants appeal. Affirmed.

*Walsh & Walsh,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, and *H. Victor Spike,* Assistant Attorney General, for defendants.

FELLOWS, J. Plaintiff is the owner of a farm of 320 acres in Clay township, St. Clair county, having a frontage of 1,985 feet on St. Clair river, which there runs north and south. Running along the bank of the river there is now and has been within the memory of the oldest witnesses produced on the hearing a north and south highway, which runs from Algonac to Roberts Landing. Until 15 years ago it was the ordinary country highway; it was then cindered and at the present time the cindered portion is from 15 to 18 feet in width. On the west side of

the highway plaintiff and his predecessors in title have always maintained a fence. On the east side of the used highway is the bank of the river running from 4 to 8 feet in height. The distance between the fence and the river bank runs from 30 feet to 2 rods. The beach is well adapted for bathing, and plaintiff has one dock extending 90 feet into the river and another smaller dock in front of his premises. He rents two houses on his farm in the summer to resorters. It fairly appears that the shore front and riparian rights are valuable for use in connection with the upland. The highway has become a part of the State trunk line system and is known as M 27-17A. It is now proposed to build sheet piling, in some instances, out in the river, and fill in from the bank to the sheet piling, thus widening the road to a considerable extent, and contracts have been let for such work. Plaintiff, claiming that this is a taking of his property without just compensation, filed this bill against the State highway commissioner, the board of county road commissioners and the contractors, seeking an injunction to restrain such action. In the circuit court a decree granting such relief was entered and defendants appeal.

There is no testimony that the highway was ever laid out or that there was a formal dedication and acceptance. Both parties agree that there has been an implied dedication and acceptance, the dividing line between them being the extent of such implied dedication and acceptance. Defendants' counsel insist that it extends 4 rods east of the fence. Plaintiff's counsel insist that it is limited by the ground used, and in no event can it be extended farther east than the natural barrier formed by the bank of the river. Both counsel insist that the former holdings of this court sustain their contention. We shall consider the cases cited by counsel and other cases from this State as we are persuaded our own cases are

sufficient to determine the question.    Where italics are used in quotations they are ours.

Defendants' counsel rely most strongly on *Bumpus* v. *Miller*, 4 Mich. 159, and *Kruger* v. *LeBlanc*, 70 Mich. 76.    Defendants' counsel also rely on section 20, chapter 1, Act No. 243, Pub. Acts 1881 (1 Comp. Laws 1915, § 4307).    Plaintiff's counsel rely on *Goretski* v. *Railway Co.*, 172 Mich. 623, and *Coleman* v. *Railroad Co.*, 64 Mich. 160.    The language relied upon in *Bumpus* v. *Miller, supra,* is:

"Whether the highway is acquired by user only, or under the provisions of the Constitution, it must be four rods in width.    The dedication, or donation, *when not expressly or impliedly restricted by the owner,* is not confined to the mere track which is beaten by carriages and the feet of animals in passing along, but includes and carries with it the four rods in width, as provided by statute."

In *Kruger* v. *LeBlanc, supra,* it was said:

"Highways by user are based upon the implied dedication by the owner of the land; and, *where there is nothing to indicate a contrary intention,* the presumption is that the owner intended to dedicate the land to the full legal width.    *Bumpus* v. *Miller,* 4 Mich. 159.    But where the owner has placed fences or other means, during the time the statute is running, within the statutory width, it indicates an intention not to dedicate to the full width, and the public is only entitled to claim the part which it has been permitted to use."

Plaintiff's counsel point out that the highway was a highway by user long before the act of 1881 was passed, and insist that the act is not applicable here. They also point out that the language used in *Bumpus* v. *Miller, supra,* was not necessary to decision and was *dictum.*    Replying to defendants' reliance upon the act of 1881, as applicable here, they quote the following language from *Coleman* v. *Railroad Co., supra:*

"But the clause in the statute making such roads four rods wide was adopted in 1881, after the highway in question had become a public road by user. * * *

"The legislature, in my opinion, in 1881, could not alter or change the vested rights of the plaintiff in the premises. It would be taking the land of the plaintiff, without compensation, for public use, and without his consent."

In *Goretski* v. *Railway Co., supra,* it was said:

"We think that its width, depending upon the user and nonuser, was a question for the jury. In the case of *Coleman* v. *Railroad Co.,* 64 Mich. 160, it was held that a highway can be partially discontinued by nonuser, and stands, as against long (adverse) possession, no better than any other property, and a highway by nonuser only is measured as to its width by such use. In that case, as here, counsel cited the statute— the present section 4061, 2 Comp. Laws (2 How. Stat. [2d Ed.], § 2193)—and the fact was noted by the court that the clause in that statute making such roads 4 rods wide, was adopted in 1881, after the highway in question had become a public road by user."

That the legislature did not intend by the act of 1881 to change existing highways, and that it could not by legislative enactment take property of the individual without compensation is settled in this court. In *McKay* v. *Doty,* 63 Mich. 581, it was said:

"It was not the intention of the legislature to abrogate any public highway which had become such by use. * * *

"It is very doubtful, however, whether it is competent for the legislature to condemn, by legislative enactment, the lands of private owners so as to include them in the bounds of a highway which has become so by user prior to the passage of the act, by a change of the line of the center of the highway."

And in *Watz* v. *Sunderland,* 147 Mich. 96, where this statute was under consideration by this court, it was said:

"To so construe this language as to uphold the judgment of the lower court is to declare that it transfers to the public land actually owned, possessed, and occupied by defendant without giving him any opportunity whatever of contesting the claims of the public or of asserting his own rights. As thus construed, the law is a bald legislative attempt to transfer to the public the property of one of its citizens. It cannot be so construed, because such a construction would render it unconstitutional."

In *City of Detroit* v. *Myers,* 152 Mich. 666, it was held (we quote from the syllabus):

"The use by the public of a portion of a strip of land claimed to be a public way does not, of necessity, either in city streets or country roads, determine the public right to extend over four rods in width."

In *Bedard* v. *Simons,* 160 Mich. 545, where the dedication had been of a definite strip, and the *Bumpus* and *Kruger Cases* were invoked to sustain a presumption of a dedication of a wider strip, it was said:

"An examination of these cases will discover that they do not support the proposition to which they are cited. An owner of unoccupied land, especially in a subdivision of land by platting, cannot well express an intention to restrict a street to a particular width in a better way than to indicate, specifically, the width of the street. Both of these cases cited are authority for the proposition that where there has been an express and accepted dedication of land to the public use for a highway, there is no room for the presumption, or the implication, of a dedication or donation of a wider strip of land. This is agreeable with the general rule."

In *Wayne County Savings Bank* v. *Stockwell,* 84 Mich. 586 (22 Am. St. Rep. 708), it was said:

"It is not necessary that a highway established by user should be of the statutory width of four rods. A highway by user becomes such to the width and extent used."

The decisions of this court should not lead to any confusion on the subject if we will keep in mind the necessary elements of a dedication by implication. Dedication contemplates an offer by the individual and acceptance by the public. If formal, the fact that an offer has been made and has been accepted will be easy of proof. If by implication the facts and surrounding circumstances must imply not only an offer but also an acceptance. So here, there must not only be an offer to dedicate by the owner but there must also be an acceptance by the public, both to be implied from the facts and circumstances surrounding the case. An owner may offer four rods if he chooses, but he is not bound so to do. He may offer less. If he offers less the public, at least in the absence of statute, may accept or reject it; the public may accept the full amount tendered or it may, at least in the absence of statute, accept less. ' *County of Wayne* v. *Miller,* 31 Mich. 447. And even after acceptance by the public the rights may, in the absence of statute, be lost by nonuser. *Gregory* v. *Knight,* 50 Mich. 61; *Lyle* v. *Lesia,* 64 Mich. 16; *Coleman* v. *Railroad Co., supra; Goretski* v. *Railway Co., supra.* What must not be overlooked is that there must be acceptance on the part of the public which, of course, may be implied from facts established and the surrounding circumstances. In the instant case if we lay aside for the moment the question of an implied offer to dedicate and consider only whether the facts imply an acceptance by the public of the beach and river bottom extending some two rods east from the bank, defendants must fail. It is true that on a few occasions the public authorities helped themselves to gravel on plaintiff's beach, and they also repaired the bank to prevent the road washing away. But this was not sufficient to establish acceptance of an offer to dedicate (*Village of Grosse Pointe Shores* v. *Holmes,* 196 Mich. 183), and we might well rest affirmance of the decree

on the ground that the *locus in quo* had not been accepted by the public.   But if we pass this and for the purposes of the case accept all that is claimed for *Bumpus* v. *Miller, supra,* and *Kruger* v. *LeBlanc, supra,* and hold that an offer to dedicate presumes a four-rod strip, still the presumption is a rebuttable one, and all the facts and circumstances in the instant case rebut it.   The strip east of the bank of the river was valuable to the owner even in the early days.   It furnished him access to the river, for boating and fishing and bathing; with little labor it could be made available as a watering place for his stock.   It was utterly valueless to the public for highway purposes in the early days and totally unsuited for public travel. The situation itself rebuts any intent on the part of the owner to dedicate the beach for a public highway or any intent on the part of the public officials to accept it for that purpose.   The fence on the west side admittedly fixed the west boundary of the strip dedicated.   The natural barrier on the east as effectively fixed the east boundary of the strip dedicated as would a fence, as effectively as though there had been a bluff running up instead of a bank running down.   The decree of the court below which restrained defendants from taking plaintiff's property east of the river bank without condemnation proceedings was right.   It will be affirmed, with costs of this court.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.